S. H. COCHRAN, Appellant, v. JOSEPH CANTY, Appellee.

**LANDLORD AND TENANT:** Lien—When Lien Attaches. A land-
1  lord's lien for rent cannot attach prior to the date when the time
    covered by the lease commences to run. (Sec. 2992, Code, 1897.)
        PRINCIPLE APPLIED: Roberts, with a stock of drugs, was
    in possession of plaintiff's premises under a lease which expired
    October 15, 1912. The terms of this lease, and whether oral or
    written, do not appear. All rent under this lease was paid. On
    August 29, 1912, while the said stock was yet on the premises under
    the above lease, plaintiff and Roberts entered into a new and
    independent oral lease of said premises for the year .commencing
    October 15, 1912, and ending October 15, 1913, at an agreed rental.
    Roberts continued under his old lease until some time in September,
    1912, when, for value, he sold his entire stock to Canty, who
    removed the same from said premises on October 12, 1912, three
    days before the old lease expired and the new independent lease
    commenced, of all of which Canty had knowledge. There was no
    claim that the sale to Canty was fraudulent. Thereafter, the prem-
    ises remained vacant. The rent under the new lease was not paid.
    *Held*, plaintiff's lien did not attach to the stock.

**LANDLORD AND TENANT:** Lien—When Lien Attaches—''Term.''
2  "During the term," within the meaning of the statute giving a
    landlord a lien for rent on personal property used or kept on the
    premises, signifies the *time* covered by the lease.

**FRAUDS, STATUTE OF:** Debt or Default of Another—Considera-
3  tion—Change of Position. An oral promise to answer for the
    debt, default or miscarriage of another if such other does not pay,
    for which promise the promisor receives nothing, and under which
    - the promisee in no manner changes his position, is within the
    statute of frauds.

*Appeal from Harrison District Court.*—J. B. ROCKAFELLOW,
Judge.

THURSDAY, JUNE 29, 1916.

ACTION to recover as for the conversion of personal prop-
erty, on which plaintiff claims to have had a landlord's lien.
The opinion states the facts. Judgment for defendant in the
court below.—*Affirmed.*

*Cochran & Barrett,* for appellant.

*J. A. Murray,* for appellee.

GAYNOR, J.—This action was originally brought to recover as for a wrongful conversion by the defendant of certain property on which plaintiff claims to have a landlord's lien for rent. It appears that one J. H. Roberts was in the possession of certain premises, owned by the plaintiff, under a lease which terminated on the 15th day of October, 1912; that he had in his possession on said premises certain property amounting in value to about $1,000, and this was subject to plaintiff's lien for rent under the lease ending October 15, 1912. On the 29th day of August, 1912, and before this lease terminated, and while Roberts was still in possession under the former lease, he and the plaintiff entered into an oral contract, by the terms of which the plaintiff leased to said Roberts the same premises, then occupied by him, for another year. By the terms of this oral agreement, the new lease was to commence on the 15th day of October, 1912, and terminate on the 15th day of October, 1913. The rental agreed upon was $240, payable in monthly installments of $20 per month. Nothing further was then done between Roberts and the plaintiff touching the possession of the property, and Roberts continued, under his old lease, to occupy the building and to conduct the business in which he was engaged, to wit, the drug business, in said building, until about the 7th or 20th of September (the evidence is in conflict on this), when Roberts sold his entire stock in said building to this defendant, and on the 12th day of October, 1912, the defendant moved the entire stock from the building, and the building, thereupon and thereafter, became vacant and unoccupied. Defendant knew of the making of this new lease at the time he purchased and removed the property from the building. Neither Roberts nor the defendant nor the goods were ever in the building during the term of the new lease. The action

1. LANDLORD AND TENANT: lien: when lien attaches.

is brought against defendant Canty to recover the amount of the rental accruing under this new lease, for the entire year. The action is brought on the theory that plaintiff had a lien upon the goods so purchased by the defendant, at the time they were purchased, for the entire rental to accrue under this new lease, and that the purchase and removal of the property by the defendant amounted to a conversion of property upon which plaintiff had a landlord's lien. We will not attempt to be accurate as to the amounts in figures, since this question must be settled upon the law of the case, whatever the amount may be. Our statute, Section 2992, Code, 1897, provides:

"A landlord shall have a lien for his rent upon all crops grown upon the leased premises, and upon any other personal property of the tenant which has been used or kept thereon *during the term.*"

There is nothing in the record to indicate what the old lease was, whether oral or in writing, or for what term it had run at the time this new lease was made, on August 29, 1912; but it does appear that the old lease did not expire until the 15th day of October, 1912, and it does appear that the property in controversy was on the premises on the 29th day of August, 1912, and continued to be upon the premises until the 12th day of October, 1912. If, upon the making of the new lease on August 29th, to commence on the 15th day of October, 1912, the plaintiff acquired a lien upon the property then on the premises, for the rental to accrue under the new lease, then the taking of this property by the defendant, and the converting of it to his own use, without satisfying the lien, left the defendant liable to plaintiff to the extent of plaintiff's lien upon the property so converted. But if the plaintiff did not acquire any lien by the making of the contract on the 29th day of August, for rent to accrue under the new lease, until the commencement of the term of the new lease, then the plaintiff had no lien upon the property at the time it was purchased by the defendant, and, having had no

lien at the time, he is not in a position now to complain of the action of the defendant in purchasing and removing the property. All the rent, under the prior lease, was paid to October 15, 1912.

The determination of this case depends upon the construction to be given to the statute. It is true that it has been held by this court that a lien attaches to all property brought or used upon the premises during the term of the lease, immediately, and as security for the entire rent agreed to be paid. See *Martin v. Stearns*, 52 Iowa 345; *Gilbert, Hedge & Co. v. Greenbaum*, 56 Iowa 211. There is no evidence that the making of the new lease was intended or considered as an extension of the old lease. It was a new and independent contract, entered into between the plaintiff and Roberts. The term under the new lease was to commence on the 15th day of October, 1912, and end on the 15th day of October, 1913, at a stipulated rental. Before the term provided for in this new lease commenced, Roberts sold the property to defendant, and the defendant, before the commencement of the term, removed the property from the premises. It was not on the premises at the time the term under the new lease commenced. The statute provides a lien for rent upon personal property used or kept on the premises *during the term*. The lien is purely statutory—attaches because of the statute. Unless, therefore, a lien under the new lease attached to the goods, on the premises, before the 15th day of October, 1912,—that is, before the commencement of the term provided for in the new lease,—the plaintiff has no standing in this court upon this issue. This depends upon the construc-

2. LANDLORD AND TENANT: lien: when lien attaches: "term."

tion to be given to the words "during the term." This means, of course, during the term provided for in the lease. The word "term," as used in this statute, we think has a definite legal meaning, and signifies the time covered by, or the duration of the estate created by the lease. It also signifies, of course, the estate granted, and the interest that passes by it. See

*Hurd v. Whitsett,* 4 Colo. 77—84; *Baldwin v. Thibaudeau,* 17 N. Y. Supp. 532 (28 Abbott's New Cases 14).

In *Taylor v. Terry* (Cal.), 11 Pac. 813, quoting from *Young v. Dake,* 5 N. Y. 463, it is said:

"The time between the making of the lease and its commencement in possession is no part of the *term* granted by it. The *term* is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself, by virtue of the lease, from the time it vests in possession."

We hold, therefore, that the *term* of the lease, made on August 29, 1912, did not commence until the 15th day of October, 1912; that the property in question was never upon the premises, kept, or used there, *during the term of this new lease.* It never, therefore, became subject to any lien under this lease. The defendant having no lien upon the property at the time it was sold by Roberts to the defendant, September 20, 1912, there was no conversion of any property on which plaintiff had a lien, at the time the property was removed by defendant, October 12th.

In 1 Taylor on Landlord and Tenant (9th Ed.), page 13, Sec. 15, we find the following:

"The estate of lessee for years is called a term, *terminus,* because its duration is limited and determined. It is perfected only by the entry of the lessee; for, before the time fixed for entry, the whole estate remains in the lessor, and the lessee has strictly no estate in the land, but merely a right thereto which is called an *interesse termini.*"

In 1 Woods on Landlord and Tenant (2d Ed.), Sec. 60, the author says:

"Every estate which must expire at a fixed period, by whatever words created, is an estate for years; and, therefore, commonly called a term."

At Section 63, it is said:

"The lease gives no possession; it only gives a right of possession; therefore, until entry is made by the lessee (under

the lease), no possession is vested in him by his lease, and, therefore, he cannot bring an action of trespass before entry. A man makes a lease to J. S., to commence at the feast of St. Michael; lessee may grant, but he cannot have an action of trespass before entry.''

As held in *Lee v. Cochran*, 47 So. 581 (157 Ala. 311), where a lease provided that it was for a term of five years, 1905 to 1909, inclusive, and gave the lessee an option to purchase at any time during his "term," by paying $1,280, the "term" within which the option could be exercised was the period of five years between 1905 and 1909, inclusive. On this branch of the case, we think the plaintiff must fail.

After the evidence was in, the plaintiff filed an amendment to his petition, as he says, to conform the pleadings to the proof. In this amendment, he alleged that he was absent from the city of Logan, where the property in question was situated, at the time the sale was made to the defendant; that, upon returning and learning that the sale had been made, he informed the defendant that he had a lien upon the property so purchased by the defendant, for rent accruing from and after October 15, 1912; that, about the first of December, he told the defendant that he would sue Roberts and attach for rent the stock of goods purchased by the defendant, unless the rent was paid; that defendant said to plaintiff orally that, if he would not attach his goods or sue, he would pay the rent himself, if he could not get Roberts to do so; that, in reliance upon this promise, plaintiff did not attach the goods for the installment of rent due; that later, when the installment of rent fell due, and about the 1st of January, 1913, he again told the defendant that the rent was in arrears, and that he would have to sue and attach the defendant's goods (meaning the goods purchased by the defendant), unless he paid the rent, and the defendant then orally agreed that, if he would not sue and attach the goods, he would pay the rent, but he wanted time

3. FRAUDS,
STATUTE OF:
debt or default
of another:
consideration:
change of
position.

to see Roberts and see if he couldn't get the money from Roberts; that the plaintiff desisted from suing and attaching for the installment then due, relying upon this oral promise; that later on, and about the time the lease expired, he again told the defendant that he would bring an action and attach the property if the rent was not all paid; that the defendant again orally agreed that, if he would not sue and attach, and would give him a little time to see Roberts, he would get him (Roberts) to furnish the money, and if Roberts did not furnish the money, defendant would pay all the rent; that, in reliance upon this promise, plaintiff delayed bringing the action and attaching the goods, until about 10 days before this suit was brought, at which time defendant informed the plaintiff that he was afraid if he paid the rent he could not get it back from Roberts, and thereupon refused to perform his oral contract. To this, defendant filed a general denial, setting up an estoppel under the statute of frauds. The testimony on this branch of the case is brief, and is not in conflict. Plaintiff testifies:

"Soon after my return from the Springs, I learned from some source that Mr. Canty had bought this stock. I called him to my office, and asked him if it was true he had bought the stock, and he said he had. I said: 'I suppose you know I have a landlord's lien on that stock for the value or amount of my rent for the year, and of course I will hold you as a conversioner of the stock unless my rent is paid according to the lease.' He replied that he did not apprehend any danger about the rent being paid, that he thought Mr. Roberts would pay the rent, and if he didn't, he would. I told him I would keep him posted from time to time, and if Roberts got in arrears on the rent I would let him know. I subsequently conversed with defendant and said: 'Joe, I have given you notice from time to time, about Roberts being in arrears on the rent. Now the lease is ended and I hold you responsible for my rent, and I will have to sue you for conversion of the stock unless you pay.' Defendant answered: 'All right, Mr.

Cochran; don't bring any suit until I find out.' He told me afterwards that he supposed he would have to let it go ahead, as Mr. Roberts insisted on defending the case through him; that he would have to have it adjudicated in that way. I then proceeded with the case. I gave him two or three written notices to the effect that Roberts was not paying the rent, and I would hold him responsible, for converting the goods.''

M. L. Barrett, witness for the plaintiff, testified:

''I heard a conversation between Mr. Roberts and Mr. Cochran in December, 1912, about the rental. Mr. Roberts told Mr. Cochran he had a tenant who would take the building. Mr. Cochran told him that he would not consent to let him sublet the building, but said, 'If you can rent the building to some person for drug store purposes or something that will not conflict with the drug store fixtures, I will consent that you sublet it, but I will hold you personally for the rent during the term.' Mr. Cochran told him that he would not release his landlord's lien, and that he would still hold him (Roberts) responsible on his contract and expect him to pay.''

One Rogers testified:

''Roberts was running the store and was in possession of it September 23, 1912. Mr. Roberts told Mr. Canty before the goods were purchased that he had rented the building for a year. There was some talk between them as to who should pay the rent. Mr. Roberts said that he would take care of that; that Canty was to pay Mr. Roberts, and Mr. Roberts was to turn the rent over to the plaintiff.''

This is all the testimony offered tending to support this second claim of the plaintiff, and is wholly insufficient for that purpose. The agreement under which plaintiff seeks to hold the defendant cannot be proved in the manner in which it was undertaken to be proved in this case. It violates Section 4625 of the Code of 1897, which provides:

''Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it

be in writing and signed by the party charged or by his authorized agent: . . .

"3. Those wherein one person promises to answer for the debt, default, or miscarriage of another."

See *Frohardt Bros. v. Duff,* 156 Iowa 144, which we think is a full answer to the contention of the defendant, under the record here made.

An examination of the proof shows that the allegations of the pleader were not sustained. There is nothing in this record tending to show that the defendant agreed to pay the rent if appellant would not sue or attach. The defendant had a right to sue Roberts, but, under our holding here, had no lien upon the property, and no right to a landlord's attachment against this property. It is not claimed that the sale to Canty was fraudulent. Further, there is no consideration for any promise made by Canty. Defendant was not liable to the plaintiff for anything at the time these conversations were had; nor was the property in the possession of the defendant subject to any lien of the plaintiff. Plaintiff could not have enforced any lien against the property in the hands of the defendant.

It must be borne in mind that the defendant had purchased, paid for, removed, and had these goods in his possession at the time these conversations were had. In the first conversation recited by the plaintiff, he told the defendant that he had a lien upon these goods for the rent; that he would hold him as conversioner. In this conversation, no mention was made of attachment or suit. The thought of the plaintiff was that he would hold the defendant liable as for conversion. Defendant replied that he did not apprehend any danger about the rent; that he thought Roberts would pay it; that, if he did not, he would; that the defendant received no consideration for this promise, and the plaintiff surrendered no right which he had, in consideration of the promise. In the last conversation, plaintiff re-asserted the

same right, saying that he would sue him as for conversion of the stock, and the defendant said: "All right, but don't bring suit until I find out." He later told the plaintiff that he might proceed with the suit; and he did proceed with the suit.

Under the holding in the *Duff* case, supra, this is insufficient to create a liability on the part of the defendant. Upon this branch of the case, the plaintiff, too, has failed for want of proof of the allegations upon which he predicates his right to recover.

We think the judgment of the court below was right, and it is—*Affirmed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.